UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| **JIMMETRIA MOSS,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | Civil Action Number |
| ) | **5:20-CV-01003-AKK** |
| **VB FRANCHISE** ) | |
| **DEVELOPMENT, LLC D/B/A** ) | |
| **ROCK N ROLL SUSHI,** ) | |
| ) | |
| **Defendant.** ) | |

## MEMORANDUM OPINION

Jimmetria Moss asserts that she was discharged from her position as a line cook at Rock N Roll Sushi, owned by VB Franchise Development, LLC, on the basis of her gender in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e *et seq*. The court has for consideration VB Franchise's motion for summary judgment, doc. 17, in which it argues that Moss has failed to offer any evidence that her gender factored in her discharge. This motion is briefed and ripe for review, docs. 19–21, and, in light of Moss's failure to present any evidence of gender-based animus, it is due to be granted.

### I.

Under Rule 56(a) of the Federal Rules of Civil Procedure, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56. "Rule 56[] mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (alteration in original). The movant bears the initial burden of proving the absence of a genuine issue of material fact. *Id*. at 323. Then, the burden shifts to the nonmoving party, who is required to "go beyond the pleadings" to establish that there is a "genuine issue for trial." *Id*. at 324 (internal quotations omitted). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

At summary judgment, the court must construe the evidence and all reasonable inferences arising from it in the light most favorable to the nonmovant. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 157 (1970); *see also Anderson*, 477 U.S. at 255. Factual disputes are resolved in the nonmoving party's favor when sufficient competent evidence supports the nonmoving party's version of the disputed facts. *See Pace v. Capobianco*, 283 F.3d 1275, 1276, 1278 (11th Cir. 2002) (a court is not required to resolve disputes in the nonmoving party's favor when that party's version of events is supported by insufficient evidence). However, "mere conclusions and

unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005) (per curiam) (citing *Bald Mountain Park, Ltd. v. Oliver*, 863 F.2d 1560, 1563 (11th Cir. 1989)). Further, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252)).

A nonmoving party may dispute a material fact through an affidavit based on personal knowledge. *United States v. Stein*, 881 F.3d 853, 856–57 (11th Cir. 2018). "[A] litigant's self-serving statements based on personal knowledge or observation can defeat summary judgment." *Id.* Because juries, not courts, make credibility determinations, courts must credit the nonmoving party's version of events when conflicts arise between the facts evidenced by the parties. *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1252 (11th Cir. 2013).

## II.[1]

Rock N Roll Sushi discharged Jimmetria Moss from her position as a line cook following a physical altercation at the restaurant the day before between Moss and a male employee, Quinn Terry. *See* docs. 17-1 at ¶¶ 1, 3, 20 at 2. The altercation began when Moss, who was training Terry in the kitchen, realized Terry was using a different cut of meat than usual to fulfill an order and attempted to correct him. Docs. 17 at ¶ 6, 20 at 2–3. Terry physically bumped his chest into Moss, and the two began to curse at each other. Doc. 20 at 3. As their shouting grew louder, Harley LeVan, the restaurant's general manager, heard noises from outside the kitchen and came in to investigate. *Id.* Moss told LeVan that Terry had "put his hands on her." *Id.* LeVan asked Moss to leave, and she left the restaurant through the front door before LeVan allegedly asked Terry to leave the restaurant through the back door. *Id.*; doc. 17-1 at ¶ 9.

Once outside, Moss called her partner and asked her to come pick her up from the parking lot. Doc. 20 at 4. Her partner arrived within 15 minutes. *Id.* As they were leaving the parking lot, Moss saw Terry outside of the restaurant but did not

---

[1] The parties differ in their recounting of the facts. *Compare* doc. 17 at ¶ 12 ("LeVan testified that he decided to fire [Moss] after she continued to threaten another employee outside of the [r]estaurant after being instructed to leave the [r]estaurant premises."), *with* doc. 20 at 3 ("LeVan's claims are false. Moss left when LeVan told her to and waited in front of the building for her ride.") (internal citations omitted). Because VB Franchise has moved for summary judgment, the court construes the evidence and reasonable inferences arising from it in the light most favorable to Moss, the nonmovant. *See Anderson*, 477 U.S. at 255; *see also Feliciano*, 707 F.3d at 1252.

speak to him.  *Id.*  Moss also saw LeVan and asked him "what was going on," but LeVan said "not to worry about it and that he would talk to [Moss] the next day." *Id.* at 5.  Moss asserts she did not otherwise speak to LeVan or acknowledge Terry, and that after this brief exchange with LeVan, she went home. *Id.*

The next day, LeVan called Moss and discharged her. *Id.*  Moss maintains that LeVan said he discharged her because "she had cursed loudly the day before" and for "'other reasons' that he did not specify." *Id.*  As Moss acknowledges, LeVan claims that he discharged Moss "because she refused to leave when he told her to and instead circled the parking lot looking for Terry threatening to 'beat' Terry's 'ass.'" *Id.*  LeVan testified that the incident in the kitchen between Moss and Terry did not factor in the discharge and that Moss would not have lost her position if she had not threatened Terry outside in the parking lot.[2]  Doc. 17-2 at 13.  An employee information sheet from the day after the incident lists Moss's reason for discharge as "loud profane language from kitchen that interupted [sic] service, striking manager."  *Id.* at 16.  A document titled "Employee File – Termination Notes," apparently prepared by one of the co-owners of Rock N Roll Sushi, states:

> Got a call from [LeVan] last night (June 14) concerning an event that happened at the store that resulted in the termination of Jimmetria Moss.  I was informed by [LeVan] there was an issue that arose between Jimmetria and Quinn (Ezequil) Terry. . . . The managers got between [Moss and Terry] and told them to calm down and that they were both

---

[2] LeVan testified that Terry informed him of the threat when LeVan went outside to smoke a cigarette and that he subsequently heard Moss threaten Terry.  Doc. 17-2 at 8–9.

5

> going home for the night. Jimmetria continued to cuss and try to get to [Terry]. During this as Jimmetria kept trying to get to [Terry] she struck [LeVan]. He finally got her to understand that she needed to leave. She then left and her and her ride kept circling and hanging out in the parking lot in their car saying that they were waiting for [Terry] to leave and that they were going to beat his a.. Since [Moss] struck [LeVan] and then continued to make threats, [LeVan] made the decision that she was terminated.

*Id.*

Moss, however, contends that LeVan's stated reason for the discharge is "fabricated," and that she neither drove around after her partner picked her up nor threatened Terry after they left the restaurant. Doc. 20 at 1. The day after LeVan discharged Moss, LeVan hired a male line cook. *Id.* at 6.

### III.

Title VII makes it unlawful to discharge any individual "because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Here, Moss seeks to prove, through circumstantial evidence, that her discharge was the product of intentional discrimination. Doc. 20 at 5. Thus, the court utilizes the burden-shifting method of proof established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Under this framework, Moss must first establish a prima facie case of sex discrimination. *See Walker v. Mortham*, 158 F.3d 1177, 1183 (11th Cir. 1998). If Moss meets this requirement, VB Franchise must provide a legitimate, nondiscriminatory reason for the discharge. *See id.* at 1184. If VB Franchise does

so, Moss must prove that VB Franchise's reason is pretext for discrimination, not "the true reason" for the discharge.  *See id.*; *Chavez v. Credit Nation Auto Sales, LLC*, 641 F. App'x 883, 886 (11th Cir. 2016).  However, "[t]he ultimate burden of persuading the trier of fact that [VB Franchise] intentionally discriminated against [Moss] remains at all times with [Moss]."  *See Springer v. Convergys Mgmt. Grp., Inc.*, 509 F.3d 1344, 1347 (11th Cir. 2007).

VB Franchise concedes the prima facie case.  Doc. 21 at 3.  Thus, the only issues for the court to address are whether VB Franchise has "articulate[d] some legitimate, nondiscriminatory reason" for Moss's discharge, and whether Moss has shown this reason is pretext for unlawful discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.  The court addresses each in turn.

### A.

To satisfy its burden of producing legitimate, nondiscriminatory reasons for a challenged employment action, the defendant-employer "need not persuade the court that it was actually motivated by the proffered reasons" but instead must "raise[] a genuine issue of fact as to whether it discriminated against the plaintiff." *Chapman v. AI Transp.*, 229 F.3d 1012, 1024 (11th Cir. 2000) (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–55 (1981)).  "Although this burden is not 'onerous,' neither is it a mere formality."  *Walker*, 158 F.3d at 1184 (citing *Burdine*, 450 U.S. at 253).  The court's inquiry is "limited to whether the employer

gave an honest explanation of its behavior." *Chapman*, 229 F.3d at 1024 (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir. 1991)). As such, "federal courts 'do not sit as a super-personnel department that reexamines an entity's business decisions.'" *Elrod*, 939 F.2d at 1470.

VB Franchise asserts that LeVan discharged Moss because "[she] continued to threaten another employee" after LeVan asked her to leave. Doc. 21 at 3. In her response to VB Franchise's motion, Moss acknowledges as much. Doc. 20 at 9 ("VB Franchise's articulated reason for terminating Moss is that she refused to leave the premises after LeVan told her to and instead chased Terry around the parking lot and threatened to 'beat his ass.'"). Accordingly, VB Franchise's "proffer of [this] nondiscriminatory reason[] eliminate[s] the presumption of discrimination, thereby shifting the burden to [Moss] to come forward with sufficient evidence to permit a reasonable factfinder to find that [this] reason[] [was] pretextual." *See Chapman*, 229 F.3d at 1024. In other words, it is now up to Moss to show that VB Franchise's reason is pretext for its actual, discriminatory rationale.

B.

"To establish pretext, an employee must specifically respond to the employer's explanation and produce sufficient evidence for a reasonable factfinder to conclude that the employer's stated reason is pretextual." *Chavez*, 641 F. App'x at 886–87. To that end, the employee must show "both that the given reason was

8

false and that discrimination was the real reason." *Id.* (citing *Brooks v. Cty. Comm'n of Jefferson Cty.*, 446 F.3d 1160, 1163 (11th Cir. 2006)). In analyzing these claims, the court's "sole concern is whether unlawful discriminatory animus motivate[d] the decision," not whether the decision to discharge the employee was prudent, fair, wise, or accurate. *Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1266 (11th Cir. 2010). To put it bluntly, "[Title VII does not] require the employer to have good cause for its decisions. The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." *Nix v. WLCY Radio/Rahall Commc'ns.*, 738 F.3d 1181, 1187 (11th Cir. 1984) (abrogated on other grounds).

Moss can demonstrate pretext by "(i) casting sufficient doubt on [VB Franchise's] proffered nondiscriminatory reasons to permit a reasonable fact finder to conclude that [its] proffered reasons were not what actually motivated its conduct, (ii) showing that [VB Franchise's] articulated reason is false and that the false reason hid discrimination, or (iii) establishing that [VB Franchise] has failed to clearly articulate and follow its formal policies." *See Lewis v. City of Union City*, 934 F.3d 1169, 1186 (11th Cir. 2019). "[A] reason cannot be proved to be 'a pretext for discrimination' unless it is shown *both* that the reason was false, and that discrimination was the real reason." *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993) (emphasis in original); *Martin v. Shelby Cty. Bd. of Educ.*, 756 F. App'x

9

920, 922 (11th Cir. 2018).[3]  Finally, notwithstanding the *McDonnell Douglas* framework, Moss's claim can also survive summary judgment if she presents "a convincing mosaic' of circumstantial evidence that would allow a jury to infer intentional discrimination." *Lewis*, 934 F.3d at 1185 (internal quotation marks omitted).[4]

In *Lewis*, the Eleventh Circuit held that Lewis, a former police detective, presented circumstantial evidence raising a genuine issue of material fact regarding her discharge, which was allegedly based on, in relevant part, her race and gender. *Id.* at 1173, 1186. First, Lewis "presented evidence from which a jury would be entitled to conclude that the city's actions . . . were extraordinarily arbitrary," including that the city police department gave her no warning that she would be

---

[3] Moss is correct that a prima facie case, combined with sufficient evidence that the employer's asserted reason is false, "may permit the trier of fact to conclude that the employer unlawfully discriminated." Doc. 20 at 9; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000). But an employer is "entitled to judgment as a matter of law if the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff create[s] only a weak issue of fact as to whether the employer's reason was untrue and there [is] abundant and uncontroverted independent evidence that no discrimination had occurred." *Reeves*, 530 U.S. at 148. The court can evaluate factors like "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id.* at 148–49.

[4] "A 'convincing mosaic' may be shown by evidence that demonstrates, among other things, (1) 'suspicious timing, ambiguous statements. . ., and other bits and pieces from which an inference of discriminatory intent might be drawn,' (2) systematically better treatment of similarly situated employees, and (3) that the employer's justification is pretextual." *Lewis*, 934 F.3d at 1185. Moss has not alleged such a circumstantial mosaic and instead seeks to prove her claims through the *McDonnell Douglas* framework. Doc. 20 at 5.

terminated upon exhausting her accrued leave. *Id.* at 1185–86.  In addition, Lewis sufficiently alleged that the department's proffered reasons for her discharge—her medical condition, absence without leave, and failure to timely file paperwork—were pretextual, in that the department did not actually believe she had a serious medical condition and had suddenly imposed previously nonexistent deadlines and policies in order to discharge her. *Id.* in 1186.  Moreover, evidence could have enabled a jury to find the department implemented its policies "to the benefit of white men and to the detriment of black women," and one lieutenant even testified that "he assigned 'lady' detectives to 'children and women crimes' and 'the more aggressive stuff' to [male officers]." *Id.* at 1187–88.

In this case, at summary judgment, the court takes the facts in the light most favorable to Moss and credits her version of events where narratives conflict, given that she is the nonmovant.  Moss contends that "[she] did not do what LeVan alleges," that is, refuse to leave the premises, chase Terry around the parking area, or threaten violence.  Doc. 20 at 11–12.  On the contrary, Moss asserts that after LeVan asked her to leave, she waited outside for her partner to pick her up for 10 or 15 minutes.  Doc. 19-1 at ¶¶ 5, 6.  During this time, she did not speak to LeVan or Terry, and after her partner arrived, they drove away, stopping only for Moss to ask LeVan "what was going on." *Id.*  Taking this version of events as true, Moss has presented evidence that the allegations underlying VB Franchise's proffered reason

for discharging her are false—that, contrary to LeVan's statements, Moss did not linger by the restaurant or threaten Terry in the parking lot.

However, the case law suggests that though Moss need not introduce "additional, independent evidence of discrimination," Moss must present sufficient evidence supporting a reasonable inference that VB Franchise discharged her because of gender discrimination. *See Hinson v. Clinch Cty. Bd. of Educ.*, 231 F.3d 821, 831–32 (11th Cir. 2000); *Martin*, 756 F. App'x at 922; *Smith*, 644 F.3d at 1326.[5] As proof of the alleged gender discrimination, Moss cites the alleged inconsistent reasons VB Franchise has articulated for her discharge. In particular, Moss asserts that in the discharge form, "LeVan said that the reason [that Moss was discharged] was that [Moss] had cursed loudly and that [LeVan] was 'hit' at some point during the altercation," doc. 1 at ¶ 22, and that, when LeVan called her, "[LeVan] said the reason [she was discharged] was that [she] had cursed loudly the day before and 'other reasons' that he did not specify," doc. 19-1 at ¶ 7. And in their summary-judgment briefing, based on LeVan's testimony in the discovery phase of this case, both parties state that V.B. Franchise's proffered rationale for Moss's discharge is

---

[5] "[I]f a jury reasonably could infer from the evidence presented that the employer's legitimate justification is pretextual, the question becomes whether the evidence, considered in the light most favorable to the plaintiff, yields the reasonable inference that the employer engaged in the alleged discrimination." *Smith*, 644 F.3d at 1326.

that, after LeVan asked Moss to leave the restaurant, she remained on the premises and chased Terry around the parking lot, making threats. Docs. 17-1 at 11, 20 at 9.

Even crediting Moss's version of events, contrary to *Lewis*, Moss has not provided evidence to illustrate that her discharge was motivated by anything other than what LeVan—even erroneously—claimed to perceive following the altercation at the restaurant or that LeVan is lying to cover up a discriminatory motivation for discharging her. For example, Moss does not allege suspicious or unprecedented circumstances surrounding her discharge, deviations from established policies, discriminatory comments, or poor employee-recordkeeping on the part of VB Franchise that would allow a jury to infer that Moss's discharge was the product of unlawful discrimination. *See Hinson*, 231 F.3d at 831. And the inconsistency in reasons for her discharge that Moss bases her entire claim on falls short of rising to the level of an actual shift in the justification for her discharge. As Moss notes, when LeVan called her to inform her of the discharge, he cited "'other reasons' that he did not specify." *See* doc. 19-1 at ¶ 7. That he subsequently provided those reasons in his deposition—*i.e.*, the threats outside, which matched the information he conveyed to one of Rock N Roll Sushi's owners on the night of the incident—does not mean that he fabricated the reason or that it is inconsistent with what he told Moss. *See Rodriguez v. Cargo Airport Servs. USA, LLC*, 648 F. App'x 986, 991 (11th Cir. 2016) (noting that employer's developing rationale is not necessarily suggestive of

13

pretext); *Monds v. Quitman Ga.*, 767 F. App'x 750, 756 (11th Cir. 2019) ("Shifting justifications may evidence pretext, but only when the justifications actually shift.") (internal citations omitted); *Flowers v. Troup Cty., Ga., School Dist.*, 803 F.3d 1327, 1338–39 (11th Cir. 2015) (agreeing with district court that alleged inconsistencies in the employer's explanation for discharging employee "[were] easily reconciled").

In sum, Moss states that her discharge "[was] based entirely on objective, concrete facts that were allegedly personally observed by its decisionmaker," LeVan, and that these events did not occur as LeVan claims. Doc. 20 at 10. But even assuming Moss is correct that LeVan fabricated the reason, because Moss does not allege facts to support a reasonable inference that LeVan discharged her because of gender discrimination, she has failed to meet her burden. Therefore, VB Franchise's motion is due to be granted.

## IV.

For the reasons stated above, VB Franchise's motion for summary judgment is due to be granted. The court will enter a separate order contemporaneously.

**DONE** the 8th day of September, 2021.

_____
**ABDUL K. KALLON**
UNITED STATES DISTRICT JUDGE